In re Todd W. LINKLATER, Debtor.

BOND'S JEWELERS, INC., doing business as Gordon's Jewelers, Plaintiff,

v.

Todd W. LINKLATER, Defendant.

Bankruptcy No. BK–LV–83–0697.
Adv. No. 83–0628.

United States Bankruptcy Court,
D. Nevada.

April 17, 1985.

Robert K. Dorsey, Las Vegas, Nev., for plaintiff.

William L. McGimsey, Las Vegas, Nev., for defendant.

## MEMORANDUM DECISION

ROBERT CLIVE JONES, Bankruptcy Judge.

Plaintiff, Bond's Jewelers, Inc. (Bond), brought this adversary proceeding against the debtor, Todd W. Linklater, to determine the dischargeability of a debt under 11 U.S.C. § 523(a)(6) (Bankruptcy Code). The Court must determine whether a perfected purchase money security interest in consumer goods was lost when two or more retail installment contracts were consolidated. The Court must then decide whether the debtor's sale of those consumer goods and conversion of the proceeds was willful and malicious and, thus, nondischargeable under Code § 523(a)(6).

On May 10, 1982, Bond sold the debtor several items of jewelry by retail installment contract. Under the terms of the contract, Bond retained title to each item until the full purchase price of the respective item was paid. In addition, the contract provided that:

All add-on purchase balances will be added to the buyers existing contract in accordance with the terms thereof. Payments on any add-on consolidation balance will be allocated to sales as they occurred and security interest of seller is released with respect to any goods paid for.

The debtor then executed a security agreement and financing statement covering the items purchased. Neither the security agreement, nor the financing statement was filed of record.

On October 21, 1982, the debtor returned and received credit for one of the items purchased on May 10. The debtor also purchased two additional items of jewelry under a retail installment contract. The language from the May 10 contract, quoted above, is also contained in the October 21 contract.

The two contracts were then consolidated for accounting purposes, the balance of the May 10 contract being added to the October 21 contract. Again, the debtor executed a security agreement and financing statement, neither of which was filed.

The debtor has not made any payments on the consolidated October 21 contract. In addition, the debtor sold the jewelry and subsequently filed his bankruptcy petition.

Bond contends that it holds a perfected purchase money security interest in the consumer goods purchased on May 10 and on October 21. Bond argues that the debtor sold the goods in contravention of the security interest and converted the proceeds and, therefore, the debt should not be discharged.

The debtor contends that the purchase money security interest in the goods purchased on May 10 was lost when the respective contracts were consolidated on October 21. The debtor argues that after consolidation, the items purchased on May 10 secured not only their own price, but also the price of the items purchased on October 21. Therefore, Bond's security interest in the consumer goods purchased on May 10 became a non-purchase money security interest. Since no financing statement was filed, Bond's security interest in the consumer goods was unperfected, and thus, avoidable under Code § 522(f)(2)(A). The debtor concludes that Bond had no perfected purchase money security interest in the jewelry when it was sold and, thus, was effectively an unsecured creditor. Therefore, Bond was not injured by the debtor's sale of the jewelry.

The Bankruptcy Code does not define the term "purchase money security interest". Therefore, the Court must look to state law for a definition. The Nevada Uniform Commercial Code (U.C.C.) states that "A security interest is a 'purchase money security interest' to the extent that it is taken or retained by the seller of the collateral to secure all or part of its price." N.R.S. 104.9107(1). It is not necessary to file a financing statement to perfect a purchase money security interest in consumer goods. N.R.S. 104.9302(1)(d). "Consumer goods" are goods used or bought primarily for personal, family or household purposes. N.R.S. 104.9109(1). Bond and the debtor agree that jewelry is a consumer good. The parties also agree that Bond had a perfected purchase money security interest in the jewelry purchased on May 10. However, the parties dispute, and the Court must decide, whether a perfected purchase money security interest in consumer goods is lost when two or more retail installment contracts are consolidated.

A number of courts have decided this issue, and two "rules" have emerged: the "transformation rule" and the "dual status rule".

The transformation rule states that if collateral secures its own purchase price as well as the purchase price of other goods, the purchase money security interest existing prior to the "add on" contract

is transformed into a nonpurchase money security interest. *See In re Pristas,* 742 F.2d 797, 800 (3d Cir.1984). The transformation rule, however, is typically applied in cases where neither the consolidated contract, nor state statute, allocates payments between the various debts. The policy underlying the transformation rule is to prevent over-reaching creditors from retaining title to all items covered under the consolidated contract until the last item purchased is paid for. *See In re Manuel,* 507 F.2d 990, 992 (5th Cir.1975); *In re Norrell,* 426 F.Supp. 435, 436 (M.D.Ga.1977); *In re Kelley,* 17 B.R. 770, 772 (Bkrtcy.E.D.Tenn. 1982); *In re Krulik,* 6 B.R. 443, 446 (Bkrtcy.M.D.Tenn.1980).

The dual status rule states that the existence of a nonpurchase money security interest in goods does not terminate a purchase money security interest in those goods, to the extent that the collateral continues to secure its own price. *See In re Pristas, supra,* at 801; *In re Moore,* 33 B.R. 72, 74 (Bkrtcy.D.Ore.1983); *In re Breakiron,* 32 B.R. 400 (Bkrtcy.W.D.Pa. 1983); *In re Gibson,* 16 B.R. 257, 269 (Bkrtcy.D.Kan.1981). The rationale behind the dual status rule comes from the language of U.C.C. § 9–107, which allows a purchase money security interest in goods "to the extent" that it secures the purchase price of the goods. The policies underlying U.C.C. § 9–107 are to encourage security agreements that benefit both buyer and seller, and to facilitate the sales of consumer goods. *See In re Pristas, supra,* at 801; *In re Gibson, supra,* at 267–68.

The policies underlying both the dual status rule and the transformation rule are served when the dual status rule is properly applied. Application of the dual status rule requires the court to determine the extent to which goods secure their own purchase price and the extent to which those goods secure other purchases. *In re Pristas, supra,* at 801; *In re Gibson, supra,* at 268–69. If the allocation can be made, the purchase money security interest will remain intact to the extent that the collateral continues to secure its own price.

Purchase money security interests that secure other goods will be deemed nonpurchase money only to the extent that they secure the other goods.

The allocation of payments between the various purchases may be made by agreement, mandated by statute, or provided by the court. *In re Gibson, supra,* at 269. One method of allocation that serves the policies of both the transformation rule and the dual status rule is the "first-in first-out" (FIFO) method. A FIFO system assigns the payments to debts as they occurred chronologically. Older debts are the first paid.

A FIFO system allows a seller to retain a purchase money security interest in an item until the purchase price is fully paid. The FIFO system also prevents creditors from retaining title to, or a purchase money security interest in, goods for which the purchaser has completely paid. *See J. White & R. Summers, Uniform Commercial Code* § 23–7, at 922–23.

In this case, the language of the contract provides a FIFO method of allocation. The contract states that payments will be "allocated to sales as they occurred and security interest of seller is released with respect to any goods paid for." Since the contract allocates the payment equitably under a FIFO system, the Court holds that the Nevada Uniform Commercial Code permits a seller to retain a purchase money security interest in goods that also secure later purchases, to the extent that they secure their own purchase price. The purchase money security interest in the jewelry is not avoidable under 11 U.S.C. § 522(f)(2)(A).

The case of *In re Matthews,* 724 F.2d 798 (9th Cir.1984), is not applicable here. The *Matthews* decision addressed the issue of whether a purchase money security interest in household goods is lost when the debt giving rise to the security interest is refinanced. In *Matthews,* the refinancing loan was given to pay off the existing loan, to pay insurance, and advance money to the debtor, not to purchase goods. The *Mat-*

*thews* Court concluded that the purchase money security interest was lost and that the lien would be avoided under § 522(f)(2). In the present case, however, the earlier debt and security interest were not paid off or extinguished in the later transaction. Rather, the two loans were consolidated for accounting purposes, with a clear allocation of the payments to the respective purchases using the FIFO method. The debtor retained the right to a release of the security interest in the earlier purchase upon payment of the earlier debt.

The Court must now determine whether the debt is nondischargeable. Code section 523(a)(6) states that "A discharge under § 727 ... does not discharge an individual debtor from any debt ... (6) for willful and malicious injury by the debtor to another entity or to the property of another entity."

The term "willful and malicious", as used in § 523(a)(6), does not necessarily mean ill will, spite, or personal hatred. An act injuring the property interests of another is willful and malicious for § 523(a)(6) purposes if it is without knowledge or consent, intentional, and unjustified or unexcused. *See In re Singleton,* 37 B.R. 787, 792 (Bkrtcy.D.Nev.1984); *Matter of Graham,* 7 B.R. 5, 7 (Bkrtcy.D.Nev.1980).

When a debtor intentionally and knowingly sells collateral without the knowledge or consent of the secured creditor, the sale constitutes a willful and malicious act. The debt which the collateral secured then becomes nondischargeable under § 523(a)(6). *See In re Cardillo,* 39 B.R. 548, 551 (Bkrtcy.D.Mass.1984); *In re Thomas,* 36 B.R. 851, 853 (Bkrtcy.W.D.Ky. 1984); *In re Clark,* 30 B.R. 685, 687 (Bkrtcy.W.D.Ok.1983); *In re Howard* 6 B.R. 256, 258 (Bkrtcy.M.D.Fla.1980).

In this case, the debtor was aware of Bond's security interest in the jewelry. Nevertheless, the debtor sold it intentionally and without the creditor's knowledge or consent causing injury to Bond's interest in the jewelry. The debt, therefore, is nondischargeable.

The foregoing shall constitute findings and conclusions. Plaintiff shall submit a form of judgment for entry by the Court.