In re George Dean **KRULIK** and Vickie Ann Krulik, Debtors.

John McLEMORE, Trustee, Plaintiff,

v.

SIMPSON COUNTY BANK, Defendant.

SIMPSON COUNTY BANK, Plaintiff,

v.

George Dean KRULIK, Defendant.

George Dean KRULIK and Vickie Ann Krulik, Plaintiffs,

v.

DAN'S FURNITURE, The Peoples Bank and Simpson County Bank, Defendants.

Bankruptcy No. 379–00269.

Adv. Nos. 380–0086, 380–0118 and 380–0122.

United States Bankruptcy Court, M. D. Tennessee.

Aug. 12, 1980.

Michael W. Edwards, Hendersonville, Tenn., for the debtors.

John C. McLemore, Nashville, Tenn., trustee, pro se.

J. Richard Downey, Franklin, Ky., for defendant Simpson County Bank.

Sam J. McAllester, III, Nashville, Tenn., for defendant Dan's Furniture.

## MEMORANDUM

RUSSELL H. HIPPE, Jr., Bankruptcy Judge.

This matter is before the court upon a complaint filed by the debtors seeking to avoid liens upon certain property pursuant to § 522(f) of the Bankruptcy Reform Act

of 1978,[1] a complaint filed by the trustee seeking authorization to sell certain other property pursuant to § 363(b), (f) and § 544(a) of the Act,[2] and a complaint filed by a secured creditor seeking to deny the debtors their discharge and, in the alternative, seeking a determination by this court that its debt is nondischargeable under § 523(a)(2)(A) and § 523(a)(6) of that Act.[3] These adversary proceedings were consolidated for trial, which was held on April 9, 1980. At the conclusion of the trial, the court entered an order dismissing those portions of the debtors' complaint relating to a recreational boat, motor, and trailer; an automobile not used in commercial activity; and certain household furnishings. The court also dismissed that portion of the secured creditor's complaint seeking denial of the debtors' discharge. The court took under advisement the trustee's complaint, the remaining portions of the debtors' complaint relating to certain household furnishings and appliances, and the remaining portion of the secured creditor's complaint.

## A. Lien Avoidance under § 522(f)

The furniture and household goods that are the subject of the debtors' complaint were purchased from the defendant Dan's Furniture in several transactions between 1975 and 1977. Retail installment contracts, under the terms of which the seller retained a security interest in the items purchased, were executed in connection with each purchase. There were outstanding balances on each of these contracts on October 28, 1978, when the debtors and Dan's Furniture executed a new security agreement which consolidated all of the debtors' existing obligations. The new agreement granted Dan's Furniture a security interest in all of the furniture and household goods to secure payment of the consolidated indebtedness and "any and all other indebtedness Buyer may now or hereafter owe Seller or its assignee." The agreement specifically provided that "[u]ntil all installments and all other amounts due hereunder have been paid, and all of Buyer's obligations are fulfilled, Seller shall retain title to and a security interest in said goods."

Section 522(f) enables debtors to avoid contractual liens on household furnishings and household goods claimed as exempt if the liens are nonpossessory and nonpur-

1. Section 522(f)(2)(A) provides:

   (f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is–

   .   .   .   .   .

   (2) a nonpossessory, nonpurchase–money security interest in any–
   (A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor; . . . .

2. Section 363(b), (f) provides:

   (b) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

   .   .   .   .   .

   (f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if–

   (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
   (2) such entity consents;
   (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of such interest;
   (4) such interest is in bona fide dispute; or
   (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

3. Section 523(a)(2)(A), (a)(6) provides:

   (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt–

   .   .   .   .   .

   (2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by–
   (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

   .   .   .   .   .

   (6) for willful and malicious injury by the debtor to another entity or to the property of another entity; . . . .

chase–money in nature. It is conceded that the debtors are entitled to this relief as to the remaining household items if the security interest granted Dan's Furniture by the October 28 agreement is nonpurchase–money.

The Bankruptcy Reform Act does not contain a definition of either a purchase–money or a nonpurchase–money security interest. The Uniform Commercial Code (hereinafter the Code) defines a purchase–money security interest as one

  (a) taken or retained by the seller of the collateral to secure all or part of its price; or

  (b) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

Tenn.Code Ann. § 47–9–107 (1979). Official Comment 1 to this Code section provides in pertinent part:

  Under this Section a seller has a purchase money security interest if he retains a security interest in the goods; a financing agency has a purchase money security interest when it advances money to the seller, taking back an assignment of chattel paper, and also when it makes advances to the buyer (e. g., on chattel mortgage) to enable him to buy, and he uses the money for that purpose.

Official Comment 2 provides in pertinent part:

  2. When a purchase money interest is claimed by a secured party who is not a seller, he must of course have given present consideration.

■ This court has previously held that the consolidation of several existing obligations secured by purchase–money security interests into a single obligation secured by all of the collateral transforms the purchase–money security interests into nonpurchase–money security interests under the

Code. *McLemore v. Leader Furniture Co. (In re Cranfield)*, BK No. 78–31580 (M.D. Tenn., May 14, 1979) (B.J.).

Other courts agree that when collateral secures any debt other than its own purchase price, it is not a purchase–money security interest under the Code.[4] *Roberts Furniture Co. v. Pierce, (In re Manuel)*, 507 F.2d 990 (5th Cir. 1975); *W. S. Badcock Co. v. Banks (In re Norrell)*, 426 F.Supp. 435 (M.D.Ga.1977); *In re Jackson*, 9 U.C.C. Rep. Serv. 1152 (W.D.Mo.1971)(B.J.); *In re Brouse*, 6 U.C.C. Rep.Serv. 471 (W.D.Mich. 1969) (B.J.); *In re Simpson*, 4 U.C.C. Rep. Serv. 243 (W.D.Mich.1966) (B.J.) (dictum).

Under the terms of the October 28 agreement, Dan's Furniture was granted a security interest in all of the furniture and household goods to secure both the consolidated indebtedness and any other of the debtors' indebtedness. Thus each item secured payment not only of its own purchase price, but the purchase price of the other items and any future indebtedness. The effect of this consolidation was to transform security interests which may have been purchase–money into nonpurchase–money security interests under the Code.

There is nothing in the plain language or in the legislative history of § 522(f)(2) to indicate that the Congress contemplated that "nonpurchase–money security interest" have a meaning different from that under the Uniform Commercial Code. When the Congress intended a term to have a different meaning in the Reform Act than it had under the Code, as in the case of "security interest," which is broadened in § 101(37) of the Act to include real property, it so indicated in the legislative history. *See, e. g.*, S.Rep.No.95–989, 95th Cong., 2d Sess. 26 (1978), U.S.Code Cong. & Admin. News 1978, p. 5787; H.R.Rep.No.95–595, 95th Cong., 1st Sess. 314 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

---

**4.** The rule has been held to be inapplicable when by statute future payments are required to be allocated between the new and existing contracts in proportion to their original cash prices. *In re Brouse*, 6 U.C.C. Rep.Serv. 471, 474–75 (W.D.Mich.1969) (B.J.). There is no such provision either in the October 28 agreement or in the Tennessee Retail Installment Sales Act, Tenn.Code Ann. § 47–11–101 et seq. (1979).

Two Reform Act cases have been located in which the courts were called upon to determine whether the security interests were nonpurchase–money for the purpose of § 522(f), and in both cases the courts applied the principal Code cases cited above. *Landaus of Plymouth, Inc. v. Scott,* 5 B.R. 37, 6 Bankr.Dec. 407 (Bkrtcy.M.D.Pa.1980); *Mulcahy v. Indianapolis Morris Plan Corp.,* 3 B.R. 454 (Bkrtcy.S.D.Ind.1980).

This court concludes that the security interest of Dan's Furniture in the remaining items is a nonpurchase–money security interest and, accordingly, that the debtors are entitled to avoid its lien pursuant to § 522(f).

### B. Sale of Property of the Estate under § 363(b), (f)

In his complaint the trustee attacks the security interest of the defendant Simpson County Bank in a 1979 Ford Mustang automobile.

Under § 544(a) of the Reform Act, the trustee has the status of a judgment lien creditor. Under the Uniform Commercial Code, an unperfected security interest is subordinate to the rights of a judgment lien creditor and a trustee in bankruptcy. Tenn.Code Ann. § 47–9–301(1)(b), (3) (1979). Perfection of a security interest in a motor vehicle may be accomplished under Tennessee law only by notation of the lien upon the vehicle's certificate of title. Tenn.Code Ann. § 55–3–126(b) (1980); *In re Wallace,* 251 F.Supp. 581 (E.D.Tenn.1966); *In re Crosson,* 226 F.Supp. 944 (E.D.Tenn.1963); *Edmondson v. Farmers & Merchants Bank (In re Phippen),* BK No. 79–30899 (Bankr. Ct.M.D.Tenn., Jan. 18, 1980); *In re DEB Cabinet Co.,* 16 U.C.C. Rep.Serv. 236 (E.D. Tenn.1974) (B.J.); *see* Tenn.Code Ann. § 47–9–302(4) (1979); *In re Russell,* 300 F.Supp. 6 (E.D.Tenn.1969).

In its answer, Simpson County Bank [hereinafter, the Bank] acknowledges that its security interest in the automobile was not perfected in accordance with the applicable Tennessee statute. The bank argues, however, that its security interest was not perfected because it relied upon the debtor, George Krulik, to apply for the title and he failed to do so. Reliance upon the purchaser of a motor vehicle, however, does not override the Tennessee statute's strict mandate with respect to the perfection of security interests in such vehicles. *See In re Crosson,* 226 F.Supp. 944 (E.D.Tenn.1963). The Tennessee approach is consistent with that in other jurisdictions. In *DeWoskin v. White (In re Keith),* 3 B.R. 382 (D.C.E.D. Mo.1980), the district court reached the same conclusion in resolving a case whose facts are very similar to those before this court:

> Though the actions of a third party were largely responsible for the failure to perfect the security interest, the bank was not entirely free from fault. It clearly could have, and indeed should have, more closely scrutinized the actions of those with whom it dealt. Furthermore, reliance upon the actions of a third party does not override the explicit statutory provisions. *Matter of Schalk,* 592 F.2d 993 (8th Cir. 1979).
>
> Concededly, there is some inequity in the result reached. The result is nevertheless dictated by the legal technicalities governing commercial transactions. *Shelton v. Erwin,* 472 F.2d 1118 (8th Cir. 1973); *Safe Deposit Bank and Trust Co. v. Berman,* 393 F.2d 401 (1st Cir. 1968).

3 B.R. at 383.

It is the court's opinion, therefore, that the Bank's security interest was unperfected and that, as a result, the trustee must prevail.

### C. Dischargeability under § 523(a)(2), (6)

Having lost the automobile to the trustee, the Bank seeks to except from the discharge of the debtor, George Krulik, the balance of the purchase price by asserting that the debtor obtained possession of the vehicle by false representations and, in the alternative, that the debtor willfully and maliciously converted its security interest.

The debtor, George Krulik, purchased the automobile on April 10, 1979, from Hunt Ford, Inc., a Kentucky automobile dealer,

executing a retail installment contract and security agreement to finance the purchase. The contract, a form provided by the Bank, contained a provision by which the dealer simultaneously with the execution of the contract assigned its rights thereunder with recourse to the Bank. Upon execution of the contract, Hunt Ford delivered to the debtor a bill of sale with the Bank's lien noted thereon. Krulik, who resided in Tennessee at all times, agreed to apply for a Tennessee certificate of title and to register the vehicle in Sumner County, Tennessee.

The Bank never communicated directly with the debtors either before or after the transaction, never ran a credit check upon them, and had made no attempt to repossess the automobile prior to the filing of the petition for relief in this court. Just after he purchased the automobile, George Krulik was laid off by his employer, the Tennessee Valley Authority. He never applied for a certificate of title to the vehicle. He never registered the automobile but instead placed upon it license plates registered to another vehicle. He explained that he failed to do so simply because he did not have sufficient funds to pay the required fees and transfer taxes.

■ A creditor who seeks to except its debt from the discharge has the burden of proving that the debt comes within the exception, which must be construed liberally in favor of the debtor. *E. g., Public Finance Corp. v. Taylor*, 415 F.2d 1370 (9th Cir. 1975); *Brown v. Buchanan*, 419 F.Supp. 199 (E.D.Va.1975).

■ Case law relating to the dischargeability of debts under § 17(a)(2) of the Bankruptcy Act of 1898, 11 U.S.C. § 35(a)(2) (1976), for the most part has been incorporated into § 523(a)(2) of the Bankruptcy Reform Act of 1978. *First & Merchants Nat'l Bank v. Jones*, 3 B.R. 410 (Bkrtcy.W.D.Va.1980). Section 523(a)(2) is modified only slightly from § 17(a)(2) in that (a) "actual fraud" is added as a ground for exception from the discharge and (b) the new section codifies case law construing § 17(a)(2) in requiring that a creditor's reliance upon a written false statement be

reasonable. S.Rep.No.95–989, 95th Cong., 2d Sess. 78 (1978); H.R.Rep.No.95–595, 95th Cong., 1st Sess. 363 (1977). Section 523(a)(2) is intended to codify case law under § 17(a)(2), which interpreted "fraud" to mean actual or positive fraud rather than fraud implied in law. 124 Cong.Rec. S17,-412 (daily ed. Oct. 6, 1978) (remarks of Sen. DeConcini), H11,096 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards). Under § 523(a)(2)(A), therefore, the objecting creditor must show

(a) that the debtor made the false representations;

(b) that at the time of making them, he knew that they were false;

(c) that he made them with the intention and purpose of deceiving the creditor;

(d) that the creditor relied on such representations; and

(e) that the creditor sustained the alleged loss and damage as the proximate result of the representations' having been made.

*See Houtman v. Mann*, 568 F.2d 651 (9th Cir. 1978); *California State Employees' Credit Union No. 6 v. Nelson*, 561 F.2d 1342 (9th Cir. 1977); *Sweet v. Ritter Finance Co.*, 263 F.Supp. 540 (W.D.Va.1967). The Bank contends that credit would not have been extended had George Krulik not represented that he would obtain a certificate of title for the automobile from the Tennessee Division of Motor Vehicles and thus perfect the Bank's security interest in the vehicle. Assuming, but without concluding, that this representation was false, the Bank is not entitled to relief. The debtor never made any representations to the Bank upon which it could have relied. The Bank's assistant vice–president testified at the trial that, under the financing arrangement with the dealer, the normal procedure was for the dealer to turn over to the purchaser the bill of sale with the Bank's lien noted upon it and to allow the purchaser to obtain the certificate of title and to register the vehicle. The Bank has not convinced the court that it accorded any more significance to this routine procedure in financing the

debtor's purchase than is given in connection with the financing of any other purchases from the dealer. It would appear that the proper party to seek such relief under § 523(a)(2)(A) is not the Bank, but the dealer. The Bank's remedy is to be found in the terms of the assignment, which provide that the Bank has full recourse against Hunt Ford for any unpaid balance due from the debtor.

■ It was the intention of Congress to include willful and malicious conversion as a ground for excepting a debt from the discharge under § 523(a)(6) of the Act. 124 Cong.Rec. S17,412 (daily ed. Oct. 6, 1978) (remarks of Sen. DeConcini), H11,096 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards). It was also the intention of Congress that the term "willful" means deliberate or intentional and not merely reckless disregard for the rights of another. *Williams v. Bryson*, 3 B.R. 593 (Bkrtcy.N.D.Ill. 1980); S.Rep.No.95–989, 95th Cong., 2d Sess. 79 (1978); H.R.Rep.No.95–595, 95th Cong., 1st Sess. 365 (1977). *See Phillips v. Rambo*, 5 Bankr.Ct.Dec. 800 (M.D.Tenn. 1979) (B.J.). Under § 17(a)(2) of the Bankruptcy Act of 1898, a creditor claiming a willful and malicious conversion of a security interest was required to demonstrate that the bankrupt's conduct evidenced an intent to defeat the creditor's security interest. *Third Nat'l Bank v. Carney*, 1 Bankr.Ct.Dec. 921, 922 (D.Vt.1975) (B.J.). There is no indication that the Congress intended to afford relief upon a lesser showing under § 523(a)(6).

In a case similar to the present one, the court in *Third Nat'l Bank v. Carney, supra,* concluded that the bankrupt's failure to obtain certificates of title and to register two platform trailers constituted negligence, which, under Vermont law, was insufficient to constitute a willful and malicious conversion of the property of another within the meaning of § 17(a)(2). 1 Bankr.Ct.Dec. at 923.

■ The Bank contends that the debtor's failure to register the vehicle and to perfect its lien was not merely negligence, but was an intentional breach of the debt-

or's contractual obligation to do so. The Bank asserts that this breach of contract on the debtor's part constituted a willful and malicious conversion of the property of another within the meaning of § 523(a)(6). It is clear, however, that a conversion requires a positive tortious act and that an action in conversion will not lie for a mere nonfeasance or neglect of some legal duty. *Jones v. Allen*, 38 Tenn. (1 Head) 626 (1858). It should be noted that as between the debtor and the Bank, the security interest remained valid and enforceable. The Bank has not cited any authority from this or any other jurisdiction for the proposition that a mere breach of such a contractual obligation constitutes a conversion. The court concludes, therefore, that the debtor's failure to perfect the Bank's security interest does not constitute the deliberate and intentional conversion contemplated by § 523(a)(6).

An appropriate order will be entered.