In re Benjamin F. BREAKIRON and Debra Marie Breakiron, Debtors.

Benjamin F. BREAKIRON and Debra Marie Breakiron, Plaintiffs,

v.

MONTGOMERY WARD and K. Lawrence Kemp, Trustee, Defendants.

Bankruptcy No. 82–1785.
Adv. No. 82–1996.

United States Bankruptcy Court, W.D. Pennsylvania.

April 8, 1983.

Joseph E. Fieschko, Pittsburgh, Pa., for debtors.

Robert S. Bernstein, Pittsburgh, Pa., for Montgomery Ward.

## MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy Judge.

### FACTS

This matter is before the Court on the Debtors' Complaint to determine the secured status of the claim of Montgomery Ward ("Wards") in a television set purchased by the Debtors. No hearing was held, the parties having agreed to stipulate to the facts and submit the case on briefs. The following is a summary of the undisputed facts.

On May 6, 1979, Benjamin Breakiron ("Breakiron") entered into a revolving charge account agreement with Wards for the purchase of retail store merchandise. The language of the revolving charge agreement provides in relevant part as follows:

3. Except for Motor Vehicle purchases Wards will retain a purchase money security interest as permitted by law in each consumer good purchased under this agreement until such consumer good together with related FINANCE CHARGE is paid for in full. Wards will not claim a security interest or other lien in any property.

5. Payments will be applied first to unpaid FINANCE CHARGE and then to purchases in the order of purchase in the ratio of the cash sale price to one another.

On November 16, 1979, Breakiron purchased a 25" console television set from Wards for which he agreed to pay $665.50, less a $10 down payment. The Charge Slip by which he added the TV to his account states, "This purchase is subject to the

terms of my Credit Agreement with you. You will retain a Security Interest in this merchandise until it is paid for in full."

All charges and payments on the account were stipulated to and after application of all payments and credits in accordance with the terms of the agreement, the balance due to Wards on the account is $721.78, of which $497.06 is directly attributable to the balance remaining on the purchase price of the television. The parties agree that the television is a consumer good.

On May 18, 1983, Breakiron filed a voluntary petition under Chapter 7 of the Code and claimed the television set exempt from the estate.

DISCUSSION

■ The question before the Court is whether Wards, under the terms of the credit agreement with Breakiron, holds a valid purchase money security interest in the television set.

The Debtor contends that, as in this case where more than one item is charged on the account and payments are made, the original purchase money status of the security interest is lost as a result of the method of application of payments to the total balance due on the account. Breakiron argues that the system of allocating payments to all items in the ratio of the original cash price to one another effectively creates a security interest in all items purchased until all are paid. The item purchased not only stands as security for its own price, but also for the balance due on all other items on the charge. Therefore, Wards is no longer a purchase money security holder but merely an unsecured creditor, having failed to perfect their interest by filing a financing statement. Additionally, Debtors' Complaint impliedly raises the argument that since the security interest is nonpurchase money, it is avoidable under 11 U.S.C. § 522(f).

Wards believes that notwithstanding the method of application of payments it holds a valid purchase money security interest in consumer goods purchased on its charge accounts. Wards relies upon the specific language of the credit agreement, which provides that a lien is retained only in the

item purchased, each item standing only as security for its own debt.

The Uniform Commercial Code as enacted in Pennsylvania defines a purchase money security interest at 13 Pa.C.S.A. Section 9107 in relevant part as follows:

A security interest is a "purchase money security interest" to the extent that it is:
1. Taken or retained by the seller of the collateral to secure all or part of its price; . . . .

Under U.C.C. Section 9–302, 13 Pa.C.S.A. Section 9302(a)(4), a purchase money security interest in consumer goods is excepted from the requirement of filing a financing statement to perfect the interest.

It is clear that Wards initially takes a valid purchase money security interest in the goods sold. However, the Debtors argue that when an item secures any debt other than its own price, the purchase money feature of the transaction is destroyed, citing In re Manuel, 507 F.2d 990 (5th Cir. 1975), In re Krulik, 6 B.R. 443 (Bkrtcy.M.D. Tenn.1980) and In re Scott, 5 B.R. 37, 6 B.C.D. 407, 2 C.B.C.2d 1012 (Bkrtcy.M.D.Pa. 1980). In each of those cases the language of the credit agreement is critically different from that in the instant case.

In both Manuel and Scott, the agreements provided that the goods purchased thereunder would be security for payment of subsequent purchases. The security interest was not limited to the particular item purchased. Both Courts held that these "add-on" contracts did not permit the seller to retain a purchase money security interest because the collateral described secured not only its own price but the price of other items.

In Krulik, the outstanding balances due on several purchase money installment contracts were consolidated into a single agreement securing the debt and future advances by all of the existing collateral. This Court also found that the purchase money security interest was invalid because the collateral served to secure debt other than its own price.

Here, the language of the credit agreement grants Wards a security interest in "each consumer good purchased . . . until

such consumer good ... is paid for in full." The agreement does not permit "add-on" of debt to prior items of collateral. Each good stands as security for its own debt.

Debtors argue that despite this language the purchase money nature of the security interest is lost due to the method of application of installment payments. They contend that the practical effect of the apportionment of payments is to permit Wards to retain a security interest in all items until all are paid, a practice which, as in the "add-on" contracts, has been held to invalidate the purchase money security interest. It is because of this similarity of result that Debtors ask the Court to hold Wards security interest to be nonpurchase money. This Court declines to do so on the present facts.

■ Where under the terms of a credit agreement each item purchased stands as security only for its own debt and a method is provided to determine when the purchase price of each item is paid in full, the purchase money nature of the security interest is valid. *In re Manuel, supra* (agreement defective in both respects), *In re Staley,* 426 F.Supp. 437 (M.D.Ga.1977) (valid purchase money security interest—agreement provided first in first out method of payment), *In re Mulcahy,* 3 B.R. 454 (Bkrtcy.S.D.Ind. 1980) (purchase money security interest invalid for lack of method for applying payments). See also *In re Gibson,* 16 B.R. 257 (Bkrtcy.Kan.1981).

In the above cases the Courts favored the first in first out method ("FIFO") of applying payments. In fact, in *Gibson,* where no method was provided by the agreement, the Court judicially imposed the FIFO method to preserve the purchase money security interest.

While Courts of many jurisdictions require or imply that the FIFO method must be used, the policy in Pennsylvania appears to be contra. The *Goods and Services Installment Sales Act* (69 Pa.C.S.A. Secs. 1101 et seq.) regulates the establishment and use of retail installment accounts in Pennsylvania. It provides:

§ 1908. Security interest.

Nothing in this article prohibits the execution of an agreement between a buyer and seller whereby the seller retains a security interest in goods sold to the buyer until full payment therefor has been made. The provisions of section 802 (now 1802) are applicable to goods sold under such an agreement.

Referring back to § 1802:

§ 1802. Allocation of payments.

When a subsequent purchase is made, the entire amount of all payments made previous thereto shall be deemed to have been applied toward the payment of the previous time sale price or time sale prices. Each payment thereafter received shall be deemed to be *allocated to all of the various time sale prices in the same proportion or ratio as the original cash sale prices of the various purchases bear to one another;* where the amount of each installment payment is increased in connection with the subsequent purchase, the subsequent payments (at the seller's election) may be deemed to be allocated as follows: an amount equal to the original rate, to the previous time sale price, and an amount equal to the increase, to the subsequent time sale price. However, the amount of any initial or down payment on the subsequent purchase shall be deemed to be allocated in its entirety to such purchase. (emphasis added) 69 Pa.C.S.A. § 1802

The method of allocation of payments set forth in the statute is similar to that in the Wards agreement. Section 1802 also provides for alteration of the method at the seller's election, permitting a payment amount equal to the original rate to continue to be applied after subsequent purchases. This section, however, prefaces the method with the words "shall be *deemed* to have been applied" and "may be *deemed.*" The use of the verb deemed in this context makes the prescribed formula for payment a presumption.

The Debtor was not required to have his payments applied as provided in the agreement. He is free to instruct Wards to apply payment for these items in a manner of his choosing. We view this agreement and statute as the direction to Wards for

allocation of payments absent a contrary instruction by the Debtor. If the method provided by the agreement is binding and the Debtor cannot direct that payments be applied to particular items after payment of finance charges, the result would deserve reconsideration by this Court. The agreement should clearly indicate that the Debtor has this choice.

Under the facts of the instant case, the Court need not decide this issue. Here the Debtor did not direct how the payments were to be applied, and even if all payments after finance charges were credited to the purchase of the television set, it would not be paid in full.

Wards' credit agreement satisfies both tests set out in the above-cited cases; the items purchased secure only their own debt and a method of allocating payments is provided. The retail installment credit agreement follows the method of allocation of the Pennsylvania statute. The Court concludes, therefore, that Wards is the holder of a valid purchase money security interest in the television set purchased by the Debtor.

An appropriate Order will issue.