(No. 98-CC-2601–

DECATUR EARTHMOVER CREDIT UNION, Claimant, *v.* GEORGE H. RYAN, SECRETARY OF STATE, Respondent.

*Opinion filed August 30, 1999.*

*Supplemental opinion filed May 9, 2000.*

KEHART, SHAFTER, WEBBER (MARK D. GIBSON, of counsel), for Claimant.

JIM E. RYAN, Attorney General (STEVEN L. MATRISCH, Assistant Attorney General, of counsel), for Respondent.

## OPINION ON MOTIONS TO DISMISS

EPSTEIN, J.

This $14,088.85 negligence claim against the Respondent's Secretary of State (the Secretary or SOS) is before us on the Respondent's second motion to dismiss, and on one dangling issue from its first motion to dismiss.

Respondent's current motion asserts the Secretary's immunity under section 3—114(i) of the Illinois Vehicle Code (625 ILCS 5/3—114(i)) as a bar to liability arising from, *inter alia,* "a [motor vehicle] certificate of title issued in error [that] is subsequently used to commit a fraudulent act." This claim presents a statutory construction issue of first impression: whether the section 3—114(i) immunity applies generally to all erroneous title certificates or whether this immunity applies only to erroneous title certificates issued pursuant to section 3—114 which deals with "Transfer by operation of law."

Also before us is one remaining issue raised in the Respondent's first motion to dismiss that was not resolved by the filing of Claimant's first amended complaint: whether the Claimant fully exhausted its alternative sources of recovery for its loss, as required by section 25 of the Court of Claims Act. (705 ILCS 505/25.) The circumstances of this case present a novel issue in this Court: the burden of proof when a Claimant seeks to justify its failure to pursue a seemingly liable third party as frivolous based on that party's subsequent bankruptcy discharge, where there was a colorable possibility that the particular liability may not have been dischargeable due to the debtor's fraud if the Claimant had timely objected in the bankruptcy proceedings and had proven fraud by the bankrupt debtor.

### Nature of the Claim

Claimant alleges that the Secretary negligently issued a new certificate of title to a motor vehicle that

should have, but did not, show the Claimant's unreleased lien of record, and that enabled the owner to sell the vehicle to an innocent purchaser without notice of the lien and without discharging the lien, thereby depriving the Claimant lender of its collateral.

## The Facts as Alleged

According to the amended complaint, which we take as true for purposes of the motion to dismiss: In late 1994, Claimant made a secured $24,125 car loan to Richard Fore on a 1991 Chevrolet Corvette. Claimant perfected a lien on the Corvette that was noted on Fore's certificate of title. In 1995, Fore legally changed his name to LeFeur and applied for a replacement certificate to reflect his new name. The SOS issued the new title without showing Claimant's lien, although it was affirmatively shown on the original certificate and was a matter of record. Fore/LeFeur did not present a purported release of lien to the SOS with his application for a new title, but his application also failed to state that there was a lien on the vehicle. With $14,088.85 outstanding on Fore/LeFeur's secured debt to the Claimant, he sold the Corvette to a *bona fide* purchaser without notice of the Claimant's lien.

According to Claimant's later pleading (memorandum in opposition to motion to dismiss, at 2), Mr. LeFeur later filed bankruptcy and received a discharge.

## The Section 3—114(i) Immunity Issue

Against the Claimant's negligence claim, Respondent asserts the immunity granted by section 3—114(i) of the Illinois Vehicle Code (625 ILCS 5/3—114(i)), which provides:

"(i) The Secretary of State shall not be held civilly or criminally liable to any person because any purported transferor may not have had the power or authority to make a transfer of any interest in any vehicle or because a certificate of title issued in error is subsequently used to commit a fraudulent act."

As a threshold matter, we agree with the Respondent, and the Claimant does not dispute, that this statutory immunity applies to the facts of this case. However, there are two distinct clauses in the section 3—114 immunity for incorrect title certificates: the first clause is triggered by an unauthorized title transferor; the second clause is triggered by later fraudulent use of an erroneous title certificate. We presume that the immunities cover damages that are caused by the two specified kinds of occurrences.

The second clause clearly covers the instant facts. First, there is no dispute that the new title certificate on Fore/LeFeur's Corvette was "issued in error" insofar as it failed to show Claimant's lien, which was a matter of record. Second, Claimant alleges that Fore/LeFeur's sale of the vehicle without satisfying the lien or disclosing it to the purchaser was a "fraudulent act" as to the Claimant. Indeed, these circumstances fall precisely within the apparent purpose of this immunity clause.

However, the applicability of the first clause, triggered by a lack of authority of the "transferor * * * to make a transfer of any interest" in the Corvette, is dubious.[1] On one hand, there is no suggestion that Mr. Fore/LeFeur was not the title owner or lacked authority to transfer the title subject to the lien. On the other hand, although it is clear that he did not have the "power or authority" unilaterally to extinguish the lender's lien of record (which is equivalent to a transfer), it is not alleged that Fore/LeFeur himself did anything to transfer or extinguish the lien. On this record at this motion stage, we

---

[1] We recognize that this clause is arguably ambiguous. For present purposes, we assume that the phrase "of any interest" in section 3—114(i) encompasses an unauthorized transfer of a partial interest in a vehicle, and we note the Vehicle Code refers to the granting of a security interest (lien) as a form of transfer of an interest in the vehicle. See section 3—112(a). 625 ILCS 503—112(a).

cannot assume that there was a "transfer" of any lien "interest" in the vehicle by any "transferor" within the ambit of the statute. See, however, *Glenview State Bank v. State* (1982), 35 Ill. Ct. Cl. 143, applying, but not discussing, the first immunity clause of section 3—114.

Despite this facial applicability of at least one of the statutory immunities, the Claimant contends that the section 3—114(i) immunities do not apply to this claim because the erroneous certificate in this case was not issued as a result of a transfer by operation of law. Claimant contends that the section 3—114(i) immunity is limited to section 3—114 title transfers, *i.e.*, to certificates issued to confirm or implement transfers of operation of law, and thus does not apply to certificates issued pursuant to other sections of the Vehicle Code such as was effected in this case by Fore/LeFeur's application for a new certificate to reflect his changed name.

Claimant's statutory construction argument rests on the legislative intent of this immunity statute, as inferred from its context in section 3—114 of the Vehicle Code. Claimant contends that the scope of the section 3—114(i) immunity is limited to the scope of section 3—114, entitled "Transfer by operation of law," which deals with transfers directed by courts and persons other than the named title-holder. Claimant points out that this immunity clause was not enacted as a free-standing section of the Vehicle Code, which would suggest general applicability, but instead was legislatively placed within section 3—114. Claimant observes that there are at least two other sections of the Vehicle Code that deal with title transfers—section 3—112 ("Transfer") and section 3—113 ("Transfer to and from dealer; records.")—and that those sections contain no immunity provisions. Claimant concludes that this statutory structure manifests a legislative intent to grant the Secretary immunity

only as to erroneous title certificates issued to implement a transfer by operation of law.

Neither party has discussed the case law. This Court has not been receptive to claims based on erroneous vehicle titles. In *Glenview State Bank v. State* (1982), 35 Ill. Ct. Cl. 143, the Court rejected a lienholder's claim much like this one, relying on the statutory immunity which was then section 3—114(h) and then contained only the first "unauthorized transferor" clause, and also citing *Wagoner v. State* (1971), 27 Ill. Ct. Cl. 127.[2]

In *Wagoner*, this Court dismissed a similar claim, holding that "the Legislature did not intend that the State * * * compensate persons for any loss they may have sustained by reason of their relying upon * * * [a] Certificate of Title" (27 Ill. Ct. Cl. at 129), a questionable holding that rejected liability on the basis of inferred legislative intent without reference to statutory immunities or any textual statutory basis. In light of the General Assembly's enactment of specific immunities for the Secretary's issuance of erroneous vehicle titles, which reflects an assumption if not a determination that liability would otherwise lie, *Wagoner's* rationale is highly dubious.

Despite the recurring claims in vehicle title error cases, this Court has never considered the scope-of-immunity argument advanced here by this Claimant. We do so now.

Claimant's construction of the section 3—114 immunity finds both support and opposition in the legislative history of this statute, which surprisingly has not been reviewed by the parties. Because the Claimant's argument is predicated on a claimed interaction of statutory text—

---

[2] *Glenview State Bank* also cited *Bank of Lyons v. State* (1967), 26 Ill. Ct. Cl. 104 and *Blake v. State* (1951), 21 Ill. Ct. Cl. 141, which both rejected claims on erroneous vehicle titles, but not due to the statutory immunity.

*i.e.*, the immunity language itself and the narrow subject of the statutory section in which it is contained—we consider the issue to be sufficiently akin to an ambiguity in the statute to open the door to consideration of legislative history to amplify the ultimate issue of the legislative intent.

The immunity provision originated as part of subsection (a) of section 3—114 of the Vehicle Code in its original 1970 enactment, and was later moved to the end of the section as a separate subsection (e). (P.A. 77—641 (1971).) Subsection (e) was later renumbered and wound up as subsection (i) as other paragraphs were inserted in section 3—114. The initial form of the section 3—114 immunity, as noted above, was limited to what is now the first unauthorized transferor clause.

The second immunity clause of the present section 3—114(i) was added by the General Assembly in 1983. (P.A. 83-1362, eff. Jan. 1, 1984.) No language in section 3—114, however, has ever narrowed the scope of either immunity clause from that provided by their own terms, and section 3—114 has never contained language limiting its immunity provision(s) to title certificates issued pursuant to section 3—114 "operation of law" title transfers. Claimant's context argument, accordingly, is purely one of inferred legislative intent.

As Claimant emphasizes, the terms of the initial immunity clause as well as its original placement in section 3—114(a) support the view that the immunity was intended by the General Assembly to cover only titles issued pursuant to "transfers by operation of law" under section 3—114. First, that section dealt only with transfers arising by operation of law, which is consistent with the view that the placement of the immunity clause in section 3—114, rather than creating a separate general

immunity section, reflects an intended narrower scope. Second, because the transactions covered by section 3—114 all involve a new title certificate requested by someone other than the named title-owner (*e.g.*, a court, a lienholder, a probate executor or lawyer, a joint tenant), the possibility of an unauthorized transfer—the specific circumstance addressed by the initial immunity clause— arises peculiarly under this section of the Vehicle Code. This heightened exposure to "unauthorized" transferors and consequent title errors lends a straightforward reason for an inferred legislative decision to grant immunity in this circumstance but not generally.

The legislative history of the second immunity clause of section 3—114(i) is quite different. The second clause did not originate with the Vehicle Code, or in section 3—114(a), but was added to section 3—114(i) in 1983. (P.A. 83-449, eff. Jan. 1, 1984.) At that time, section 3—114 still addressed third-party transactions implementing title transfers by operation of law (or required by law, *e.g.*, salvage titles, then under section 3—114(f).) This tends to support Claimant's contextual argument as to the second immunity clause, paralleling the contextual inference for the original immunity clause. As observed above, however, there is no textual indication of such a limitation for either immunity clause in the statute.

More acutely, however, the terms of the second immunity clause, unlike the terms of the first clause, do not relate to the particular situation (transfers "by operation of law") that is otherwise addressed by section 3—114. Unlike the original immunity grant (for title certificates spawned by unauthorized transferors), the second clause (for fraudulent use of erroneous titles *after* issuance) deals with a general circumstance that has no apparent nexus to the kind of transaction that generated the erroneous title.

We perceive no reason why subsequent fraudulent *use* of an incorrect title certificate is, or might be expected to be, more prevalent depending on whether the erroneous title certificate was an original title, or a voluntary transferred title, or a title transferred by operation of law under the section 3—114 procedures. Particularly in cases of omitted lien notations, as in this case and in the majority of vehicle title claims that have come to this Court, there is no suggestion of a causal connection to prior transfers "by operation of law" under section 3—114. Neither party has shown or suggested any historical difference in the occurrence of title errors—especially omissions of liens—in different kinds of vehicle title transactions. Moreover, there is no indication that the legislature might have assumed such a differential. Accordingly, we find no supporting reason for the General Assembly to have intended a limited scope to the general language of the second immunity clause— for fraudulent use of erroneous titles—when it added it to the existing immunity paragraph of section 3—114(i) of the Vehicle Code.

In the absence of a nexus between the effect of the second immunity clause and the subject of the section, the legislative placement of the second clause in section 3—114(i) does not carry much of a substantive inference. That placement is as much explained by legislative drafting convenience—placing the new immunity clause together with the pre-existing immunity clause—as it is by inferred substantive intent.

On the other hand, the plain language of the second immunity clause indicates a general applicability to all erroneous vehicle titles. Not only is there no limiting language anywhere in the text of section 3—114(i), as observed above, but the language of the second immunity clause is unqualifiedly general. The statute speaks of "*a*

*certificate* \* \* \* issued in error \* \* \* used to commit a fraudulent act." [Emphasis ours.] This language on its face encompasses *any* erroneous certificate without regard to how or when or why it was issued.

We note that the "fraudulent use" immunity clause is broader on its face than the scope of section 3—114 in which this immunity clause is embedded. That fact, however, does not itself generate an inference that the context limits the broader range of the added language. If there were a conflict between the general application of the added language and the pre-existing terms of the statute, such an argument might carry weight; in such a case, there would at least be a statutory inconsistency to be resolved by judicial construction. But where, as here, there is no conflict, and no inconsistency—and indeed, no connection at all—between the added clause and the pre-existing provisions of section 3—114, we find no basis on the face of the statute for not giving the added clause full effect in accordance with the plain meaning of its terms.

We are bound to follow the plain meaning of statutory words and phrases as the primary indicator of legislative intent absent a persuasive textual indication of a different legislative intent or, in the case of an ambiguity or conflict, absent a historical or legislative record of a contrary intent. Plainly, the burden of persuasion is on the party urging a construction other than the plain meaning of the statutory language, which in this case is the Claimant.

Thus far in the analysis, Claimant has not carried that burden: Claimant's argument that the General Assembly manifested its intent to limit these immunities—particularly the second immunity provision—to title certificates issued under section 3—114 finds no support in the text of the statute (which is facially contrary to Claimant's position) and finds no persuasive support from the legislative

history of the statutory immunity clauses, particularly the second clause added in 1983. This leaves only the specific legislative record of the second immunity clause—in the 1983 amendment to section 3—114(i)—as potential pertinent input to our interpretative decision.

That record, however, is largely barren of indication of the legislature's intent. Public Act 83—449, which was Senate Bill 1121 in the Eighty-Third General Assembly, and which *inter alia* amended section 3—114(i) to add the second immunity clause (P.A. 83—449, section 1) was a lengthy and wide-ranging enactment that made numerous amendments to the Illinois Vehicle Code (as well as to one other Act), and covered a number of issues. The only aspect of P.A. 83—449 that relates to the Secretary's liability or immunity is the change it effected to section 3—114, in which it only amended paragraph (i) and only to insert the second immunity clause: "* * * or because a certificate of title issued in error is subsequently used to commit a fraudulent act." It made no other changes in section 3—114. Our research indicates that the legislation was uncontroversial (and was presumably advocated or approved by the Secretary of State's office), as it was passed without debate as an "agreed bill" in both houses. Thus, except for the inference, if any, arising on the face of the enactment itself, there is no legislative gloss of record for us to consult.

The only pertinent intent reflected on the face of P.A. 83—449 was the intent to grant a broader immunity to the Secretary for liability, arising from fraudulent use of erroneous vehicle title certificates. Although that does not refute Claimant's argument, neither does it provide any support for it.

We conclude that we are bound to apply the plain meaning of the text of the second immunity clause, as it

was enacted by the General Assembly in 1983. We are unpersuaded that the legislature intended to limit the scope of this expanded immunity for fraudulently *used* title certificates to only some title certificates. Claimant's contextual argument is far from baseless. But after careful consideration of the language and history and draftsmanship of these provisions, this contextual argument must be rejected in favor of the plain meaning of the statutory words as enacted by the legislature.

Under section 3—114(i) of the Vehicle Code, the Secretary, and hence the Respondent, is immune from liability for negligent issuance of the erroneous vehicle title certificate in issue, based on the later fraudulent use of that certificate by Fore/LeFeur to avoid Claimant's lien and deprive it of its collateral. The Respondent's liability, if any, is barred and Respondent's motion to dismiss must be granted.

The Exhaustion of Alternative Source–Bankruptcy Issue

Respondent asserts in its first dismissal motion that the Claimant failed to exhaust an alternate source of recovery of its losses—Mr. Fore/LeFeur—as required by the Court of Claims Act (705 ILCS 505/25), and that this claim should be dismissed for this reason. We address this issue, despite our holding on the immunity issue, because of the recurring importance of bankruptcy discharges to failure-to-exhaust defenses in this Court, and because Claimant's failure to exhaust is a second basis for dismissal.

Respondent asserts that Fore/LeFeur's fraudulent sale of the Corvette to a *bona fide* purchaser was the cause of the Claimant's loss and that LeFeur is liable to the Claimant, and must be pursued to exhaustion. To this exhaustion defense, Claimant asserts Mr. LeFeur's bankruptcy. Claimant's theory is that Mr. LeFeur's

bankruptcy discharge extinguished his liability to the Claimant, thereby barring legal pursuit of LeFeur for Claimant's loss. Respondent has not replied to this point.

The Court agrees that a bankruptcy discharge of a liability generally excuses a Claimant from pursuing that bankrupt debtor on that liability as an alternative source under section 25 of the Court of Claims Act and under this Court's implementing Rule (74 Ill. Admin. Code section 790.60) because there is no longer a liability to pursue. This conclusion is compelled by our precedents construing section 25 alternate source exhaustion to require reasonable rather than absolute or formalistic exhaustion. (*See, e.g., Davis v. State* (1992), 49 Ill. Ct. Cl. 93, and cases cited therein.) This conclusion, however, does not resolve the exhaustion issue in this case because of the apparent fraud of the bankrupt debtor, Mr. LeFeur.

The unusual twist in this case is that Mr. LeFeur's bankruptcy may or may not have discharged his loan liability or his apparent tort liability to this Claimant, and even if those liabilities were in fact discharged in his bankruptcy proceedings, they may well not have been discharged if the Claimant had timely objected to their discharge in the bankruptcy court and had proven fraud by Mr. LeFeur.

The facts alleged in this case assert a fraud by Fore/ LeFeur's sale of the vehicle without paying or preserving the lien, which Fore/LeFeur knew had not been discharged. Although this Court cannot adjudicate that fraud issue on the current record, we observe that the issue has been raised and that, under the Bankruptcy Code, a fraudulent liability is non-dischargeable, although the discharge must be timely objected to in the

bankruptcy proceedings and must be adjudicated by the bankruptcy court. 11 U.S.C. 543.

The record before us does not disclose whether or not LeFeur's liability to the Claimant was in fact discharged (no copy of the bankruptcy court's order of discharge has been presented), or whether or not the Claimant objected to discharge of LeFeur's liability to it, or, if Claimant did object, whether it pursued its objection to discharge to exhaustion. However, it is clear that the Claimant has the burden of proving its exhaustion, and that in these circumstances, where the bankruptcy discharge is proffered by the Claimant, it must prove (i) the discharge of the alternative source's (LeFeur's) liability, and (ii) Claimant's exhaustion of reasonable efforts to object to that discharge on apparent fraud grounds.

Claimant has failed to carry these burdens. The Claimant has not even proved up the bankruptcy discharge of Mr. LeFeur, and has not addressed the dischargeability issue. On the current record, Claimant's failure to exhaust is a second basis for dismissal of this claim.

## Conclusion

For the foregoing reasons, it is hereby ordered:

1. Respondent's motion to dismiss this claim as barred by the immunity of the Secretary of State under section 3—114(i) is granted;

2. Respondent's first motion to dismiss for failure to exhaust its remedies against Mr. Fore/LeFeur is granted;

3. This claim is dismissed with prejudice and forever barred.

## SUPPLEMENTAL OPINION ON REHEARING

Epstein, J.

Claimant petitioned for rehearing, and asks us to reconsider both issues that were decided in our initial decision:

(1) the statutory construction issue, as to the scope of applicability of the second immunity clause of section 3—114(i) of the Motor Vehicle Code. 625 ILCS 3—114(i);

(2) the exhaustion of alternative sources issue, under section 25 of the Court of Claims Act (705 ILCS 505/25), as applied to Claimant's non-pursuit of a seemingly liable tortfeasor who filed bankruptcy and obtained a discharge but whose liability to the Claimant was arguably non-dischargeable due to the tortfeasor's fraud.

The Respondent did not respond. Because the Claimant's petition raises substantial issues that were not adequately addressed by the Court, we grant rehearing and issue this supplemental opinion and order.

### Statutory Construction:
### The Negative Pregnant Inference

The Respondent's liability for this claim turns on the applicability or inapplicability of the second immunity clause of section 3—114(i): "The Secretary of State shall not be held civilly * * * liable * * * because a certificate of title issued in error is subsequently used to commit a fraudulent act."

In our initial opinion, based largely on the legislative history and draftsmanship, we rejected Claimant's contextual argument that the applicability of that immunity is limited by the prior scope of section 3—114, into which that immunity clause was selectively placed by the

legislature (*i.e.*; Claimant's contention that this immunity language is applicable *only* to title certificates issued to implement ownership "Transfer by operation of law," which was the scope and title of the section when this immunity clause was added.)

On rehearing, Claimant forcefully renews its contextual or selective enactment construction argument, fortified by a new label and citations to opinions of the U.S. Supreme Court. In its petition for rehearing (paragraph 3(d), at 3), Claimant advances the

"* * * well established rule of statutory construction which states 'an express statutory requirement here, contrasted with statutory silence there, shows an intent to confine the requirement to the specified instance.' *Field v. Mans* (1995), 516 U.S. 59, 67, citing *Gozlon-Peretz v. United States* (1991), 498 U.S. 395, 404 ('[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion')."

Claimant seeks, with some persuasion, to apply this "apparent negative pregnant" rule of construction (Justice Souter in *Fields v. Mans*, 516 U.S. at 67) to the second immunity clause of section 3—114(i), which the General Assembly added to that section but—as Claimant emphasizes—not to other sections of the Vehicle Code that deal with issuance of title certificates in other circumstances.

We first observe that the Supreme Court *rejected* the negative pregnant inference in *Field v. Mans, supra,* on which the Claimant relies, just as this Court rejected that contextual inference in this case. As in *Field,* we found the inference was outweighed by salient factors in the legislative history and style of the disputed statute that persuaded us of a different (here broader) legislative intent than that "implied" by the negative pregnant.

Still, we agree that the negative pregnant inference argument can be a strong and even decisive principle of construction, and we concur with Claimant that the principle applies equally to all kinds of statutory provisions.

We do not, however, believe that it is inherently compelling, or that it has great force in statutory amendment contexts like that of this case.

The apparent negative pregnant inference of legislative intent arises from selective legislative silence or selective legislating (adding, amending or repealing text) among multiple statutory provisions. That can sometimes be viewed as lack of comprehensive legislative draftsmanship, rather than as reflecting intent. On the other hand, negative inference arising from selective legislating among statutory texts is most powerful *within a single enactment—i.e.*, a selective act of legislating done at one time by a legislative body in one Act.

That was the context in the federal Anti-Drug Abuse Act of 1986 (the ADAA) that was reviewed in *Gozlon-Peretz v. United States* (1991), 498 U.S. 395, as to specific delayed effective date provisions contained in some but not all sections of the ADAA. That was also the case in *Russelo*.

This case, unlike *Gozlon-Peretz* and *Russelo* but like *Field*, involves a discrete *subsequent amendment* to one section of a pre-existing Act rather than a simultaneous legislative action involving multiple provisions of a single Act. In this context, we consider the doctrine as persuasive—as it impacts the resulting text of the larger amended statute—but not dispositive.

Claimant's argument is cogent and in a different application might carry the day. But not in the face of the legislative history and style of this statute. Having reconsidered the legislative history again, the Court adheres to its conclusion that the clear general language of the immunity clause, placed into the one section of the Vehicle Code that then addressed, *inter alia*, immunity for erroneous vehicle titles, prevails over the apparent negative

pregnant inference arising out of the legislative failure to repeat the added immunity clause in other sections of the Vehicle Code.

### Construction of section 3—114(i): The Rule of Narrow Construction of Statutory Immunities

In a second argument forcefully advanced on rehearing, the Claimant urges the well-settled rule of construction favoring narrow interpretation of statutory immunities as being contrary to the common law. We recognize that this longstanding judicial bias against statutory immunization of common law liabilities runs deep in Illinois law (*e.g., Molitor v. Kaneland Community School Dist. No. 302* (1959), 18 Ill. 2d 11.) We would apply that narrow construction doctrine without hesitation if it were applicable here. It is not, for two reasons.

First, the issue here is not an ambiguity of statutory immunity language, which is susceptible of being read broadly or narrowly. In that kind of case, the doctrine of narrow construction of immunity grants would likely provide the rule of decision. In this case the immunity language is perfectly general and unambiguous. The interpretation dispute here concerns not the language but the editorial placement of that language as an indicator of legislative intent.

Second, the liability being immunized here is a *State* liability that did not exist in our Illinois common law, at least not since the Constitution of 1870, which constitutionalized the doctrine of sovereign immunity in Illinois (1870 Ill. Const. 1870, Art. IV, section 26), and arguably since statehood in 1818, as the liability of the State of Illinois has always been statutory rather than a common law right. *See,* Spiegel, The Illinois Court of Claims: A Study of State Liability, at 60-62 (U. Ill. Press, 1962), reviewing

*inter alia*, the three statutes in effect from 1819-1870 that authorized claims against the State by suit against the Auditor of Public Accounts.[1]

There is simply no established common law State liability in Illinois for a State officer's or agency's issuance of erroneous vehicle title documents. Thus the common law premise underlying the narrow construction rule has little if any application here.

### The section 25 Exhaustion of Alternative Sources Requirement: Pursuit of a Tortfeasor into Bankruptcy Court

In our initial opinion, we concluded that the Claimant failed to show that it had fully exhausted its damages claim against Mr. LeFeur—or to show "exhaustion of reasonable efforts" to pursue Mr. LeFeur—who sold the Claimant's collateral (the liened vehicle) to a *bona fide* purchaser, thus committing a conversion of the Claimant's property. We found, *inter alia*, that Claimant's exhaustion defense—that pursuit of the tortfeasing LeFeur would be futile due to the bankruptcy discharge of his debts—was, on the current record, inadequate; that Claimant had not shown that a challenge to Mr. LeFeur's discharge in the bankruptcy court, based on his fraudulent conversion, would have been futile, and therefore Claimant was obliged to pursue that objection to discharge which it did not do, thereby failing to meet the mandate of section 25 of our statute.

The issue, of course, is the *extent* to which our exhaustion requirement mandates a litigant in this Court to have pursued a source of payment that filed bankruptcy.

---

[1] Laws of Illinois, 1819, at 184; Revised Code of Laws of Illinois, 1829, at 171; and Revised Statutes of Illinois, 1845, at 394, 464. The 1829 and 1945 statutes made the judgment subject to review and appropriation by the General Assembly. That formulation—adjudication subject to legislative appropriation—has thus been the Illinois system for State liability under four state constitutions for over 170 years.

On rehearing, Claimant contends that we applied the wrong bankruptcy law standard for barring a discharge of a debtor for the kind of tortious conduct involved here, and that we therefore imposed an erroneous—and excessive—burden on the Claimant to pursue Mr. LeFeur into bankruptcy court, as a section 25 exhaustion condition of obtaining relief in this Court. Claimant contends that under the applicable standards under section 523 of the Bankruptcy Code (11 U.S.C. 523), it would have been futile and frivolous for it to contest Mr. LeFeur's discharge from his liability to the Claimant, and hence its exhaustion duty as to Mr. LeFeur was extinguished along with Mr. LeFeur's liability.

There is merit to the Claimant's argument, under section 523 of the Bankruptcy Code, although this issue appears to be governed by section 523(a)(6) (addressing "willful and malicious injury by the debtor to another entity or to the property of another entity") rather than by section 523(a)(2) (pertaining to fraudulent "obtaining of money through an extension of credit"), which is emphasized by the Claimant. This case, on the current record, involves no allegations or suggestions of fraud by Mr. LeFeur in his original loan application to the Claimant credit union; rather it involves a conversion of the Claimant's collateral long after the loan was made. This situation is governed by section 523(a)(6). See, *Field v. Mans* (1995), 516 U.S. 59, 73-74; *In re Krulik*, 6 B.R. 443 (Bk. M.D. Tenn. 1980); *In re Long*, 44 B.R. 300, 306-307 (Bk. D. Minn. 1983); *In re Long*, 774 F.2d 875 (8th Cir. 1985).

Under section 523(a)(6), as under its predecessor bankruptcy provisions, it has long been held, as Claimant now contends, that to preclude a discharge in bankruptcy due to a tortious conversion of a creditor's property, "a heightened level of culpability must be found, going beyond recklessness and beyond intentional violation * * *."

(*In re Long,* 774 F.2d at 881.) As Justice Cardozo wrote long ago, applying virtually the same statutory bankruptcy language now contained in section 523(a)(6),[2] and in a situation also involving conversion of a lender's vehicle collateral:

"The respondent contends that the petitioner was liable for a willful and malicious injury to the property of another as the result of the sale and conversion of the car [an Auburn sedan] in his possession. There is no doubt that an act of conversion, if willful and malicious, is an injury to property within the scope of this exception. * * * But a willful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances.

* * *

Nothing in the judgment of the Illinois Appellate Court is at war with the exculpatory finding made upon the trial. * * *. Its only comment is that under the law of Illinois malice and wrongful intent are not necessary constituents of a cause of action in trover. This, of course, is true, but, though true, it is beside the mark. The discharge will prevail as against a showing of conversion without aggravated features." *Davis v. Aetna Acceptance Co.* (1934), 293 U.S. 328, 331-333.

It is thus clear that Mr. LeFeur's fraudulent act of conversion, without more—*i.e.*, without aggravation "going beyond recklessness and beyond intentional violation" (*In re Long, supra*) or without "willfulness and malice" (section 523(a)(6); *Davis, supra*)—is not enough to bar a discharge.

Claimant is therefore correct in its assertion that in order for it to have successfully pursued and exhausted Mr. LeFeur's liability to it for conversion of the collateral, it would have had to prove more than mere fraud and more than mere conversion in the bankruptcy court proceedings.

Applying this section 523(a)(6) bankruptcy standard, we find that the current record in this case, which has come to us on the Respondent's motions to dismiss,

---

[2] "Subdivision 2 [of former 11 U.S.C. 35] excludes from the release 'liabilities for * * * willful and malicious injury to the person or property of another.'" *Davis, infra,* 293 U.S. at 331.

is inadequate as to the circumstances surrounding Mr. LeFeur's conversion/sale of the liened automobile for this Court to make any finding as to the efficacy of the Claimant's effort to prevent a discharge, had it sought to do so. Thus we cannot now determine whether or not it would have been futile for this Claimant to pursue Mr. LeFeur's liability into bankruptcy court or whether the circumstances could support a finding of aggravating conduct that would bar a discharge and preserve his liability to the Claimant.

Accordingly, the Court will reverse its prior finding and will deny the Respondent's motion to dismiss on this exhaustion ground. We would remit this issue for trial if this case were to be tried, and if the Respondent wished to maintain exhaustion as a defense to this claim.

However, our conclusion, renewed in this supplemental opinion, that the Secretary is immune from liability for Mr. LeFeur's conversion that he effected using an "erroneous title certificate" requires that we reaffirm our dismissal of this claim for that reason.

### Conclusion

For the foregoing reasons, it is hereby ordered:

1. The Court's order of August 30, 1999 granting Respondent's motion to dismiss for failure to exhaust remedies against Mr. LeFeur is vacated, and said motion is denied;

2. The Court's orders of August 30, 1999 granting Respondent's motion to dismiss this claim as barred by the immunity of the Secretary of State under section 3—114(i) of the Vehicle Code, and dismissing this claim, is reaffirmed.